IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON ALLEN SKINNER | § | |
| (TDCJ No. 1929580), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:16-cv1645-L-BN |
| | § | |
| LORIE DAVIS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Jason Allen Skinner, a Texas inmate, has filed a *pro se* application for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 1. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sam A. Lindsay. For the reasons explained below, the Court should deny Skinner's habeas petition.

**Applicable Background**

"A jury convicted Jason Allen Skinner of aggravated sexual assault of a child younger than fourteen years," and "[t]he trial court assessed punishment at twelve' years imprisonment." *Skinner v. State*, No. 05-14-00556-CR, 2015 WL 5656761, at *1 (Tex. App. – Dallas Sept. 25, 2015, no pet.) (citing TEX. PENAL CODE ANN. § 22.021(a)(1)(B)); *see also State v. Skinner*, No. F12-00955-M (194th Jud. Dist. Ct.,

Dallas Cty., Tex.).

Skinner's conviction and sentence were affirmed as modified on direct appeal after his counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967). *See Skinner*, 2015 WL 5656761, at *1. And he did not file a petition for discretionary review in the Texas Court of Criminal Appeals (the "CCA").

But he did file a petition for habeas relief in state court. And the CCA denied his habeas application without written order on the findings of the trial court made without a hearing. *See Ex parte Skinner*, WR-84,606-01 (Tex. Crim. App. Apr. 13, 2016); *see also* Dkt. No. 15-16 at 48-60 (trial court findings of fact and conclusions of law and affidavit of trial counsel).

In his timely-filed federal habeas application, Skinner asserts (1) that he was denied his Sixth Amendment right to a speedy trial; (2) that trial counsel was ineffective in violation of the Sixth Amendment; and (3) that there was jury misconduct – that a "jury member slept through parts of my trial." Dkt. No. 3. A court-ordered response to the petition was filed, *see* Dkt. Nos. 14 & 15, but Skinner failed to file a reply brief, and the date by which to do so has passed.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect

application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 16 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n] for which federal habeas relief is the remedy." (internal quotation marks and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies

not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))).

In sum, Section 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

## Analysis

I.   Skinner has failed to show that there was no reasonable basis to deny his <u>speedy-trial claim.</u>

Skinner first asserts that his right to a speedy trial was violated when "[i]t took over 4 [years] for first trial" setting. Dkt. No. 3 at 6 ("I spent 2½ years on leg monitor home arrest, I constantly told all my attorneys I wanted to go to trial as soon as possible [and] was granted several special [settings]."). In recommending that this claim be denied, the state trial court found that "a violation of the Texas Speedy Trial

Act is a non-jurisdictional defect and is, therefore, not cognizable on habeas review";
that there was "no indication in the record that [Skinner] ever requested a speedy
trial," which meant that "[t]his point is not preserved for habeas review and should be
denied"; that, "[o]n direct appeal, [Skinner] attempted to raise this issue in his *pro se*
response to his appellate counsel's [*Anders*] brief"; and that the Dallas Court of Appeals
"denied this issue and held the appeal to be wholly frivolous and without merit." Dkt.
No. 15-16 at 49.

This claim is arguably not procedurally defaulted. Although Skinner only raised
it to the state intermediate appellate court because he failed to petition the CCA for
discretionary review, and although the United States Court of Appeals for the Fifth
Circuit has held that *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996),
under which claims that could have been raised on direct appeal and that are
presented for the first time on state collateral review are procedurally defaulted, sets
"forth an adequate state ground capable of barring federal habeas review," *Aguilar v.
Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (citation and internal quotation marks
omitted), "the Fifth Circuit has indicated that the rule in *Gardner* does not appear to
be regularly followed in cases ... where a petitioner raised claims on direct appeal to
a state intermediate appellate court, but not to the [CCA] in a petition for discretionary
review," *Collins v. Davis*, Civ. A. No. H-15-3616, 2017 WL 896727, at *6 (S.D. Tex. Mar.
7, 2017) (citing *Walker v. Stephens*, 583 F. App'x 402, 403 (5th Cir. 2014) (per curiam);
citation omitted). Regardless, the claim, construed as asserting a violation of the Sixth
Amendment, lacks merit.

The Sixth Amendment guarantees a defendant "the right to a speedy and public trial." U.S. CONST. amend. VI. The right to a speedy trial applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment. *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012). [And a court evaluates a] speedy-trial claim under the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant. "This four-factor balancing test eschews rigid rules and mechanical factor-counting in favor of a difficult and sensitive balancing process. Section 2254(d)(1) thus requires us to give the widest latitude to a state court's conduct of its speedy-trial analysis." *Amos v. Thornton*, 646 F.3d 199, 205 (5th Cir. 2011). Moreover, "the deference due under § 2254(d)(1) is not diminished by the fact that the state court did not explain the reasons for its determination that the petitioner's claim is without merit.... If there is an objectively reasonable basis on which the state court could have denied relief, AEDPA demands that [a federal court] respect its decision to do so." *Id.*

*Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (citations modified and original brackets omitted).

Skinner's unsupported assertion of a delay of four years or more is belied by the record. But Respondent concedes that the time from Skinner's indictment (on November 5, 2012), which proceeded his arrest – "'[a] defendant's speedy-trial right attaches at the time of arrest or indictment, whichever comes first,'" *id.* (quoting *Amos*, 646 F.3d at 206) – to commencement of his trial (on April 28, 2014) exceeds *Barker*'s threshold of one year, *see* Dkt. No. 14 at 12 (citing Dkt. Nos. 15-2 & 15-8), which therefore requires that the Court balance the remaining *Barker* factors, *see Leachman*, 581 F. App'x at 402 ("The bare minimum required to trigger a *Barker* analysis is one year. If that threshold is met, [a court] examine[s] the extent to which the delay extends beyond the minimum because the presumption that pretrial delay has

prejudiced the accused intensifies over time." (citations and internal quotation marks omitted).

That balance – viewed in light of the deference that this Court owes to the CCA's denial of this claim – does not favor Skinner.

The state-court record does not demonstrate that Skinner asserted his speedy-trial right as contemplated in *Barker*. *See* Dkt. No. 15-16 at 49; *id.* at 58 (trial counsel Mike Howard's affidavit, in which he testified that he was the third attorney to represent Skinner; that "[n]othing in [his] conversations with [previous counsel] or [his] review of their files indicated that Mr. Skinner wished to file a speedy trial challenge"; and that "Mr. Skinner never asked [him] to advance a speedy trial claim"); *id.* 58-59 (Howard's testimony that, on August 20, 2013, a hearing was set on a speedy trial motion but that Skinner "never showed up" and "never gave any reason for his failure to show up" and that, when Howard "was next able to contact Mr. Skinner, he professed faith in [Howard] and again said he wanted [Howard] to take the time [he] needed to adequately defend [Skinner]"); *compare id.*, *with United States v. Frye*, 372 F.3d 729, 739 (5th Cir. 2004) (finding that the trial court erred by finding that the defendant's "'rais[ing] informally'" his right to a speedy trial is sufficient to "[make] the request required of him" under *Barker*, holding that "[t]he discussion and awareness of the right is not the relevant factor; the relevant factor is when and how a trial request is made to the court"); *Martinez v. Quarterman*, No. SA-04-CA-1023-R, 2006 WL 2042958, at *10 (W.D. Tex. July 11, 2006) ("when and how a request for a speedy trial is made to the trial court is critical" (citing *Frye*)); *Hakeem v. Beyer*, 990 F.2d 750,

765 (3d Cir. 1993) ("[I]f a defendant is to tip the *Barker* scales significantly in his favor on the factor of assertion of the right, that, at least in cases where the accused is represented by counsel, some formal motion should be made to the trial court or some notice given to the prosecution.").

There is evidence in the record that Skinner's various counsel were the driving force that delayed his case going to trial. *See, e.g.,* Dkt. No. 15-16 at 58 (Howard testified that "Mr. Skinner would complain about the time the case was taking (often in angry outbursts where he would yell at me or my staff), but [Howard] would explain that the vast majority of the delay was due to unfortunate and unpreventable circumstances of his previous counsel. [Howard] further explained that his cases were serious and involved a lot of documents and videos which required [his] careful review in order to adequately defend him."). "The Supreme Court has held that, for purposes of a speedy-trial analysis, a state may not be charged with delays caused by a defendant's assigned counsel; those delays are attributable to the defendant." *Leachman*, 581 F. App'x at 403 (citing *Vermont v. Brillon*, 556 U.S. 81, 85, 90-93 (2009)).

And there also is evidence in the record that the delay did not prejudice Skinner's defense. *See, e.g.,* Dkt. No. 15-16 at 59 (Howard's testimony that he "believe[d] the delay actually benefitted Mr. Skinner" because the assistant district attorney who replaced the one on medical leave was "more accommodating"; that, citing "the complexity of the case ... and the breadth of discovery documents," Howard "needed every bit of time that [he] took to adequately prepare the case"; and that the

-10-

witnesses Skinner claimed "were rendered ineffective by the delay were actually quite effective" and "did not forget information or otherwise suffer due to the delay"). In light of this evidence regarding "'the most serious'" interest "protected by the speedy-trial right" – "limiting the possibility that the defense will be impaired" – and given that the delay, as properly calculated, was well-under five years and that neither of the remaining initial *Barker* factors "weigh heavily in favor of" Skinner, the undersigned cannot find that Skinner has discharged his "burden ... to put forth evidence of actual prejudice." *Leachman*, 581 F. App'x at 404 (quoting *Divers*, 698 F.3d at 219); *see id.* ("Under the fourth *Barker* prong, unless the first three factors weigh heavily in favor of the defendant or the delay is at least five years, the burden is on the petitioner to put forth evidence of actual prejudice." (citing *Goodrum v. Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008); *Divers*, 698 F.3d at 219)).

Skinner therefore has not carried his burden to show that there was no reasonable basis for the state-court denial of his speedy-trial claim, and the Court should deny this claim.

II.    **Skinner has failed to show that the state court's determinations as to his IAC
       <u>claims were unreasonable.</u>**

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel ("IAC"), whether at trial or on direct appeal, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating [a] claim that

-11-

appellate counsel was ineffective ... is that enunciated in *Strickland*" (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986))).

Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear

to be remote possibilities." *Harrington*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Harrington*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result

must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated ineffective-assistance claims on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal quotation marks and citations omitted)).

In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See id.* at 101-02. Instead, on federal habeas review of a claim that was fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the

case involves review under the *Strickland* standard itself." *Id.* at 101; *see also Woods v. Etherton*, 578 U.S. ____, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 134 S. Ct. at 17, 13)).

The state trial court obtained an affidavit from Mr. Howard, as set out above, the attorney who eventually tried Skinner's case, *see* Dkt. No. 15-16 at 54-60, and found that "he is a trustworthy individual and that the statements made by him are worthy of belief," *id.* at 49; *cf. Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." (quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999))). That court, after setting out the applicable legal standards, then rejected Skinner's Sixth Amendment allegations aimed at his former counsel, predominantly on the basis of Howard's testimony:

> Based upon a thorough review of Applicant's instant application, the Court's records, and the affidavit submitted by Mr. Howard, this Court finds that the statements made by Mr. Howard are dispositive of all the allegations presented by Applicant relative to Mr. Howard:
>> a. Mr. Howard states his trial strategy was to "cross examine the complaining witness thoroughly but carefully" and "to introduce doubt about her credibility in various ways." Mr. Howard states that he "felt that he challenged

this child-witness, as aggressively as he could without alienating and angering the jury."

     b. Mr. Howard states that he investigated the termination of the [Dallas Children's Advocacy Center] interviewer and could find nothing relevant to discredit her testimony.

     c. Mr. Howard states that Applicant's two prior attorneys and he conveyed plea bargain offers to Applicant. Applicant told them he would not accept any plea bargain offer because he was not guilty.

     d. Mr. Howard states that he did not in any way intimidate Applicant not to testify at his trial.

     e. Mr. Howard states that he discussed the aspects of a speedy trial request with Applicant and that due to the complexity of the case that speeding to trial would jeopardize his defense. Applicant did not request a speedy trial and no motion was filed requesting one.

Dkt. No. 15-16 at 50-51.

     The undersigned cannot find that the state court's determinations that these allegations of constitutionally-ineffective assistance should be denied amounts "to an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see, e.g.*, *Feldman*, 695 F.3d at 378; *Cotton*, 343 F.3d at 752-53; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)).

     The IAC claims should therefore de denied.

III.   <u>The Court is procedurally barred from considering the jury-misconduct claim.</u>

     Skinner's final ground concerns a juror alleged to have slept through portions of his trial. As to this ground, the state trial court first observed that "[j]uror

misconduct is a constitutional error which must be preserved by raising the complaint

in the trial court. To preserve error regarding jury misconduct, a defendant must move

for mistrial or a new trial on the basis of the misconduct." Dkt. No. 15-16 at 51. It then

found that Skinner "has not shown that he ever moved for a mistrial or a new trial on

the basis of this alleged juror misconduct in the trial court. This claim is [therefore] not

preserved for habeas corpus review and should be denied." *Id.*

A federal court may not consider the merits of a habeas claim if a state court has

denied relief due to a procedural default. *See Sawyer v. Whitley*, 505 U.S. 333, 338

(1992). The state court opinion must contain a "plain statement" that its decision rests

on adequate and independent state grounds. *See Harris v. Reed*, 489 U.S. 255, 261-62

(1989); *see also Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006) ("A federal

habeas court 'will not consider a claim that the last state court rejected on the basis of

an adequate and independent state procedural ground.'" (quoting *Busby v. Dretke*, 359

F.3d 708, 718 (5th Cir. 2004))). To be an adequate ground for denying relief, the state

procedural rule must be strictly or regularly applied to similar claims. *See Hathorn v.

Lovorn*, 457 U.S. 255, 262-63 (1982); *see also Johnson v. Puckett*, 176 F.3d 809, 824 (5th

Cir. 1999).

Under Texas law, a party must make a timely and proper objection to preserve

a claim for appellate review. *See Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App.

1991). The objection must state "the grounds for the ruling that the complaining party

sought from the trial court with sufficient specificity to make the trial court aware of

the complaint, unless the specific grounds were apparent from the context." TEX. R.

-17-

APP. P. 33.1(a)(1)(A). This "contemporaneous objection" rule constitutes an adequate state procedural bar for purposes of federal habeas review. *See Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001). This claim is therefore procedurally defaulted.

"[A] federal court may consider a procedurally defaulted claim if 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Allen v. Stephens*, No. 3:12-cv-2014-P, 2013 WL 5545390, at *3 (N.D. Tex. Oct. 8, 2013) (quoting *Coleman*, 501 U.S. at 750). But Skinner has made no attempt to satisfy these requirements. As a result, the Court is barred from considering this procedurally-defaulted claim. *See, e.g., Whinery v. Director, TDCJ-CID*, No. 9:10v192, 2012 WL 761683, at *2 (E.D. Tex. Mar. 7, 2012) ("Even if the district court has the power to ignore the procedural default and proceed to the merits of the claims, despite the fact that these claims have never been addressed by the Court of Criminal Appeals, Whinery has shown no reason for the Court to do so.").

The Court should therefore find this ground for relief to be procedurally barred.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

-18-

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: October 19, 2017

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE